UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LINDA CAPO,<br><br>                  Plaintiff,<br><br>    v.<br><br>PORT ANGELES SCHOOL DIST. NO. 121, et al.,<br><br>                  Defendants. | CASE NO. C07-5685BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 34). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On August 3, 2007, Defendant Port Angeles School District No. 121 (the "District") gave Plaintiff Linda Capo "notice that probable cause exist[ed] for [her] discharge as an employee of the Port Angeles School District." Dkt. 35, Declaration of Sarah S. Mack ("Mack Decl."), Exh. L. On August 9, 2007, Plaintiff requested a probable cause hearing. *Id*., Exh. M. On October 26-29, 2007, the hearing officer, retired Washington Supreme Court Justice Faith Ireland, conducted Plaintiff's requested hearing. On November 6, 2007, Justice Ireland issued her Findings of Fact, Conclusions of Law, and Order regarding Defendants' probable cause to discharge Plaintiff. *Id*., Exh. A.

1 | Justice Ireland concluded that probable cause existed to discharge Plaintiff because of
2 | substantial insubordination. *Id*. at 12.

On November 28, 2007, Plaintiff commenced this civil action in the Superior Court of the State of Washington in and for the County of Clallam. Dkt. 1 at 7-13 ("Complaint"). On December 12, 2007, Defendants Port Angeles School District No. 121, Dr. Gary Cohn, and Michelle Reid removed the matter to this Court. Dkt. 1 at 1-2.

In this action, Plaintiff requests two forms of relief: (1) reversal of the hearing officer's decision to terminate her employment and (2) damages for wrongful termination in violation of her rights under 42 U.S.C. § 1983 and the First Amendment. *See* Complaint.

On February 1, 2008, the Court expedited Plaintiff's request for review of Justice Ireland's decision. Dkt. 9. On May 8, 2008, the Court upheld the decision to terminate Plaintiff's employment. Dkt. 21.

On December 30, 2008, Defendants moved for summary judgment on Plaintiff's wrongful termination claim. Dkt. 34. On January 20, 2009, Plaintiff responded. Dkt. 38. On January 22, 2009, Defendants replied and included a motion to strike portions of Plaintiff's response. Dkt. 43.

## II. FACTUAL BACKGROUND

Prior to her discharge, Plaintiff had been a certificated employee of the Port Angeles School District since 1997. Mack Dec., Ex. A at 2. At the beginning of the 2005-2006 academic school year, Plaintiff expressed concerns about a new school policy that "seriously impacted teachers' First Amendment speech rights and academic freedom." Dkt. 40, Declaration of Linda Capo ("Capo Decl."), ¶ 6. Plaintiff sent an email that expressed these concerns to her supervisor, Defendant Cohn, and her union supervisor, Barry Burnett. *Id*., Exh. A.

ORDER - 2

In November of 2005, Plaintiff emailed and spoke with the then School District's Assistant Superintendent of Human Resources, Ron Spanjer. *Id.* ¶ 10. In that email, Plaintiff expressed the following concerns:

> [T]eachers without appropriate information discussing teaching plans with parents of special education students, administrators interfering in teacher-parent communications, weapons in the school, the school's lax enforcement of student discipline, disclosure of confidential information about students, and remarks by principal Harker disrespectful of females.

*Id.*; *see also id.*, Exhs. 7 and 8 (copies of actual emails).

In the fall of 2006, Defendant Cohn claims that Plaintiff "developed, nurtured and groomed a relationship" with a "15-year old sophomore" student. Mack Decl., Exh L at 1. Plaintiff arranged to tutor the student during a specific class period at school and objected to the assistant principal reassignment of the student to an office away from Plaintiff. *Id.*, Exh. A, ¶ 10. Plaintiff also transported the student to and from school on several occasions. In December of 2006, Defendant Cohn claims that the student's "family members complained to the District that [Plaintiff] may have been having an inappropriate relationship with [the student]." *Id.*, Exh. L at 1.

On December 8, 2006, Plaintiff provided Defendant Cohn with emails from teachers criticizing the leadership at the high school. Specifically, Plaintiff claims that the emails expressed concerns regarding "students whose education was being seriously impacted by the lack of discipline at the high school as well as the toleration by the administration of unlawful gender/sexuality based remarks." *Id.* ¶ 7.

On December 28, 2006, Plaintiff wrote an email to Danetta Rutten, a senior juvenile probation officer in Port Angeles. Capo Decl., ¶ 9. In that email, Plaintiff stated that she was preparing a report regarding "severe causes for concern at our school and in our district." *Id.*, Exh. 6. Plaintiff believed that the "report would make some people most unhappy." *Id.* Because Plaintiff's email service failed to deliver this email, Plaintiff claims that she hand delivered a copy of the email to Ms. Rutten's office on December 29, 2006. *Id.* ¶ 9.

ORDER - 3

Plaintiff claims that she shared her report with Patsy Feeley, the legislative assistant and chief of staff to Washington State Senator James Hargrove. *Id*. ¶ 8. Ms. Feeley claims that she spoke with Defendant Cohn about the substance of Plaintiff's report. Dkt. 39, Declaration of Jon Howard Rosen, Exh. 6 at 4. One of Plaintiff's concerns was that "teachers had been asked to change test scores." *Id*. Ms. Feeley, however, did not disclose to Defendant Cohn who had given her this information. *Id*. Upon receiving this information, Ms. Feeley claims that Defendant Cohn was "defensive" and never followed up with her, either to ask for more information or to report that any problems had been corrected. *Id*. at 5. She claims that the conversation occurred before Plaintiff was placed on administrative leave. *Id*. at 4.

On January 3, 2007, Plaintiff called in sick to work. Mack Decl., Exh. A, ¶ 20. Plaintiff, however, attended the student's probation violation hearing and attempted to become the student's legal guardian. *Id*.; *see also id.,* Exh. 5 at 1.

On January 4, 2007, Defendant Reid, the school district's assistant superintendent, sent Plaintiff a letter notifying her that she had been "placed on non-disciplinary, administrative leave with pay." Mack Decl., Exh. B. Defendant Reid stated that "the District [had] received information providing a basis for concern that [Plaintiff] may be engaged in an inappropriate relationship with a Port Angeles High School student." *Id*. Defendants also restricted Plaintiff as follows: "[Y]ou are directed not to contact or communicate in any way with current or former students of the District, current or former staff of the District and witnesses to the events of this investigation . . . ." *Id*. Plaintiff was warned that "[f]ailure to comply with this directive will result in disciplinary action, including the possibility of termination." *Id*.

From January of 2007 to August of 2007, the District engaged in an investigation of the allegations against Plaintiff. In August of 2007, the District sought to discharge Plaintiff because of "her relationship with a 15-year-old student." Mack Decl., Exh. A at 1. In Defendant Cohn's probable cause for discharge letter he alleged three charges of

1 unprofessional conduct by Plaintiff: (1) boundary invasion behaviors, (2) extreme poor professional judgment, and (3) serious insubordination. *Id.*, Exh. L at 7-10. Justice Ireland concluded that Defendants failed to prove charges one and two. *Id.*, Exh. A at 12. On the other hand, Justice Ireland concluded that Plaintiff's "actions in resuming frequent contact with [the student] while under a reasonable stay-away order constitute[d] serious, substantial, ongoing insubordination which is not remedial." *Id.* Moreover, Justice Ireland concluded that there was "probable cause to discharge [Plaintiff] on the ground of substantial insubordination." *Id.*

On May 8, 2008, this Court upheld that decision by concluding that the decision was "supported by the evidence in the record and [was] not affected by error of law, clearly erroneous, or arbitrary." Dkt. 21 at 6.

### III. DISCUSSION

**A.  Defendants' Motion to Strike**

Plaintiff attached an "Appendix" to her response that lists facts that Plaintiff claims were unknown to Defendants when they decided to place Plaintiff on administrative leave. *See* Dkt. 30-2. Defendants request that the Court strike this document as it is additional argument that pushes Plaintiff's brief beyond the allowable page limit per Local Rule CR 7(e)(3). Dkt. 43 at 2. While this may be additional argument, Defendants are not prejudiced by Plaintiff's attempt to distinguish what facts are immaterial to the current issues before the Court. Therefore, the Court denies Defendants' motion to strike Plaintiff's Appendix.

**B.  Defendants' Motion for Summary Judgment**

Defendants Cohn and Reid argue that Plaintiff has failed to meet her burden in establishing a constitutional violation. Dkt. 34 at 11-17. As a result, Defendant Port Angeles School District argues that Plaintiff cannot prove municipal liability because neither of the individual Defendants are liable. *Id.* at 17.

**1. Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### 2. First Amendment Free Speech

In order to state a claim against a government employer for a violation of the First Amendment, an employee must show (1) that she engaged in protected speech; (2) that the employer took an adverse employment action; and (3) that her speech was a substantial or motivating factor for the adverse employment action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

For the purposes of this motion, Defendants concede that Plaintiff suffered adverse employment actions. Dkt. 34 at 14. Defendants, however, contest the other two elements of Plaintiff's claim. *Id*. at 14-17. Therefore, the Court will only address those issues.

#### a. Protected Speech

Under the element of protected speech, the court must determine, as a matter of law, (1) whether the speech at issue touched on a matter of public concern, and if so, (2) whether the interests of the employee, as a citizen, in commenting upon matters of public concern outweighed the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. *Dible v. City of Chandler*, 515 F.3d 918, 926 (9th Cir. 2008).

The Ninth Circuit provides guidance on whether speech touches on matters of public concern as follows:

> Speech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first amendment protection. On the other hand, speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern. The determination of whether an employee's speech deals with an issue of public concern is to be made with reference to the content, form, and context of the speech.

*Coszalter*, 320 F.3d at 973-74 (internal citations and quotations omitted).

In this case, Defendants argue that Plaintiff's communications were only personal issues and grievances, which do not constitute matters of public concern. Dkt. 34 at 14-15. While some of Plaintiff's communications were personal, others touched on issues

ORDER - 7

such as the District's poor administration. For example, Plaintiff expressed the following concerns:

> [T]eachers without appropriate information discussing teaching plans with parents of special education students, administrators interfering in teacher-parent communications, weapons in the school, the school's lax enforcement of student discipline, disclosure of confidential information about students, and remarks by principal Harker disrespectful of females.

Moreover, Ms. Feeley claims that Plaintiff commented on teachers in the District who were being asked to alter students' test scores. Plaintiff's email to Ms. Rutten also makes reference to severe causes for concern in the school and in the district. These communications pertain to information that members of society, especially the parents of the District's students, could use to make informed decisions about the operation and administration of the District. Thus, Plaintiff's communications were not only her personal issues and grievances.

Defendants also argue that Plaintiff has failed to show that her speech should be protected because she failed to make her concerns public. Dkt. 34 at 15. The fact that the speech was directed toward a "limited audience" weighs against an employee's "claim of protected speech." *Roe v. City and County of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997). In *Roe*, the government prosecutor sent a letter that consisted "nothing more than a[n] inter-office transmittal of case citations and summaries." *Id*. In this case, Defendants claim that Plaintiff sent her emails only to her supervisors and communicated with one legislative aide. While Plaintiff's audience was limited, it is the content of the speech that determines whether it is a matter of public concern and not the expanse of the audience. As the Supreme Court stated:

> Neither the [First] Amendment itself nor our decisions indicate that this freedom [of speech] is lost to the public employee who arranges to communicate privately with [her] employer rather than to spread [her] views before the public.

*Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415-416 (1979).

Therefore, Defendants' arguments are unpersuasive and the Court concludes that Plaintiff's communications involved matters of public concern. Defendants do not

contest the second element of the test for protected speech: whether Plaintiff's interests in the speech outweigh the District's interest in promoting the efficiency of its public service. For the purposes of this order, Defendants have failed to show that they are entitled to judgment as a matter of law on the second element. Therefore, the Court finds that Plaintiff's communications are protected speech under the First Amendment.

### b. Substantial or Motivating Factor

"As with proof of motive in other contexts, this element of a First Amendment retaliation suit may be met with either direct or circumstantial evidence . . . and involves questions of fact that normally should be left for trial." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002). As an initial matter, a plaintiff must show that defendants were aware of her protected speech. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 750-52 (9th Cir. 2001).

In this case, the parties dispute whether Defendants Cohn and Reid had knowledge of Plaintiff's communications. Dkt. 34 at 16-17; Dkt. 38 at 20-22. Taking the facts in the light most favorable to Plaintiff, she has shown that Defendants had at least some knowledge of her communications. In late 2005, Plaintiff expressed her concerns directly to the District's administration. Moreover, a reasonable juror may infer that Defendants were at least aware of her criticisms in December of 2006 and in early January of 2007. Thus, the remaining question is whether this knowledge was a substantial or motivating factor in Defendants' decision to place Plaintiff on paid administrative leave.

In addition to knowledge, a plaintiff must: (I) establish proximity in time between her expressive conduct and the allegedly retaliatory actions; (ii) produce evidence that the defendants expressed opposition to her speech, either to her or to others; or (iii) demonstrate that the defendants' proffered explanations for their adverse actions were false and pretextual. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 929 (9th Cir. 2004).

In this case, Plaintiff claims that she has submitted evidence that creates material issues of fact for trial on the issues of proximity, opposition, and pretext. Dkt. 38 at 18-20. The Court will first address Plaintiff's argument of pretext because Plaintiff has previously challenged Defendants' justification for placing Plaintiff on non-disciplinary, administrative leave with pay. *See* Dkts. 5 and 18.

### I. False and Pretextual

Plaintiff argues that Defendants' justification for their adverse action is false and pretextual. Dkt. 38 at 24. The Court, however, has already considered and rejected this argument. *See* Dkt. 21. Justice Ireland found as follows:

> Given the information the District had received, the District was justifiably concerned about Ms. Capo's relationship with [the student] and it was reasonable for the District to place Ms. Capo on administrative leave on January 4, 2007 to investigate that relationship.

Mack Decl., Exh. A at 8. Plaintiff challenged this finding by arguing that there was not substantial evidence in the record to support it. *See* Dkts. 5 and 18. On May 8, 2008, the Court concluded that "the totality of the information resulted in a reasonable decision" to place Plaintiff on leave and that this finding of fact was "justified from the record." Dkt. 21 at 3-4. Therefore, Plaintiff has failed to show that Defendants' justification of an inappropriate relationship with a 15-year-old student was false and pretextual.

### ii. Proximity

In the Ninth Circuit, there is no "rule that any period under a certain time is per se short enough" to establish a reasonable inference of retaliation. *Coszalter*, 320 F.3d at 978. Moreover, in some cases

> the totality of the facts may form such a clear picture that a district court would be justified in granting summary judgment, either for or against a plaintiff, on the issue of retaliatory motive; but the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment.

*Id*.

In this case, Plaintiff argues that a juror could reasonably infer that Defendants had a retaliatory motive because there is "temporal proximity" between her speaking out and

ORDER - 10

Defendants' adverse action. Specifically, Plaintiff asserts that Defendants' retaliatory motive is shown

> by the fact that the initial adverse actions occurred within a month of (a) Ms. Capo reporting matters of public concern to the school superintendent and (b) the state legislative aide, Patsy Feeley, telling the school superintendent that she had been contacted by a teacher with serious concerns about events at the district.

*Id*. at 18. Based only on the dates of these acts, a reasonable juror might infer that Defendants sought quick retaliation for Plaintiff's criticism of their policies. The Court, however, must consider the entirety of the factual setting. *See Coszalter, supra*. In this case, no reasonable juror could infer retaliation based on the evidence in the record.

Defendants placed Plaintiff on non-disciplinary, administrative leave with pay pending an investigation into an "inappropriate relationship" with a student. It is hard to conceive of a factual scenario that would constitute less of an adverse employment action against the employee and also require some appropriate action on behalf of the employer. In other words, an allegation of an inappropriate teacher-student relationship would warrant some action regarding the teacher's status pending an investigation. The fact that the action occurs in close proximity to the teacher's protected conduct does not give rise to the reasonable inference that the protected conduct was a substantial or motivating factor for the adverse action. Therefore, Plaintiff has failed to show that a reasonable juror could infer that retaliation was a substantial or motivating factor in Defendants' adverse action because of the temporal proximity of these events.

### iii. Opposition

Similarly, Plaintiff's circumstantial evidence that Defendants opposed her speech does not give rise to a reasonable inference of retaliation. Ms. Feeley claims that Defendant Cohn was "defensive" when she spoke with him about teachers being asked to alter test scores. Ms. Feeley, however, did not disclose the source of her information. Additionally, the term "defensive" is vague and fails to describe "express opposition."

Thus, with this evidence, Plaintiff has failed to show that Defendant Cohn opposed her specific protected speech.

Plaintiff also argues that, because Defendant Cohn never acted to correct the substance of her concerns, he opposed her speech. Dkt. 19 at 23. Again, Plaintiff fails to show how Defendants' inaction rises to the level of "expressed opposition." Moreover, it is ironic that Plaintiff is now claiming that her rights were violated by the administration's overprotection of a student yet argue that Defendants never acted to correct the alleged problems related to lack of discipline and failure to enforce its policies.

Even if there exists a slight inference of opposition to her protected speech, it does not rise to the reasonable inference that this opposition was a substantial or motivating factor for Defendants' adverse action. Therefore, in light of the totality of the circumstances, Plaintiff has failed to show that a reasonable juror could infer retaliation based on this evidence of opposition.

### c. Conclusion – Free Speech

Plaintiff has shown, as a matter of law, that her communications are protected speech under the First Amendment. Defendants have conceded, for the purpose of this motion, that placing Plaintiff on non-disciplinary, administrative leave with pay was an adverse employment action. Plaintiff, however, has failed to show that there exists material issues of fact for trial on whether her protected speech was a substantial or motivating factor for the adverse employment action. Therefore, the Court grants Defendants Cohn and Reid's summary judgment on Plaintiff's claim for a retaliatory employment action in violation of the First Amendment.

### 3. Municipal Liability

In *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978), the Supreme Court held that the word "person" in § 1983 includes municipalities and other local governing bodies such as school districts. A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant

to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a "final policymaker." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003).

Plaintiff claims that Defendant Port Angeles School District is liable based on the actions of Defendants Cohn and Reid. Dkt. 38 at 13. The Court, however, has concluded that neither Defendant Cohn nor Defendant Reid committed a constitutional violation against Plaintiff. Therefore, Plaintiff's municipal liability claim against the District fails and the Court grants Defendant Port Angeles School District's motion for summary judgment.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 34) is **GRANTED**.

DATED this 18th day of February, 2009.

BENJAMIN H. SETTLE
United States District Judge